IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NETWORK CARGO SYSTEMS )
INTERNATIONAL, INC., *et* )
*al.*, )
)
        Plaintiffs, )
  v. ) No. 13 C 9171
)
CAROLINE PAPPAS, )
)
        Defendant. )

<u>MEMORANDUM OPINION AND ORDER</u>

Defendant Caroline Pappas's motion to dismiss the amended complaint is granted only in part for the reasons stated below.

I.

Pappas is the former regional sales manager for Network Cargo Systems U.S.A., Inc. ("Network Cargo America"), a wholly owned subsidiary of Network Cargo Systems International, Inc. ("Network Cargo International"). These companies--collectively, "Plaintiffs"--act as general sales agents for airlines seeking to sell cargo space on their planes.

Plaintiffs have filed an eleven count complaint against Pappas alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*,(Counts I and II); breach of her employment agreement (Count III); violation of the Illinois Uniform Trade Secrets Act, 765 ILCS § 1065/1 *et seq.* (Count IV); and various Illinois common law claims (Counts V-XI).

1

Pappas has moved to dismiss all counts in the amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In resolving Pappas's motion, I must accept all well-pled allegations in the amended complaint as true and draw all reasonable inferences in Plaintiffs' favor. *Int'l Airport Centers, LLC v. Citrin*, 440 F.3d 418, 419 (7th Cir. 2006).

II.

As an initial matter, Pappas argues that Network Cargo International lacks standing to assert any claims against her because it was not a party to her employment agreement. Plaintiffs counter that an undisclosed parent corporation is considered a party to employment agreements entered into by its subsidiaries unless a particular employee's contract provides otherwise. *See Montel Aetnastak, Inc. v. Miessen*, No. 13 C 3801, 2014 WL 702322, at *5 (N.D. Ill. Jan. 28, 2014) (Castillo, C.J.) (citing Restatement (Third) of Agency § 6.03 (2006)). However, Plaintiffs overlook the threshold requirement that the undisclosed parent corporation and subsidiary must be in a principal-agent relationship before both entities have overlapping enforcement rights with respect to the subsidiary's contracts. *Id.* at *4.

Under Illinois law, "[a] complaint relying on agency must plead facts which, if proved, could establish the existence of an

agency relationship." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 592 (Ill. 1996). "The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (applying Illinois law).

Here, the amended complaint is devoid of allegations concerning (1) whether Network Cargo International controls the manner and method of Network Cargo America's business activities or (2) whether Network Cargo America can affect Network Cargo International's legal relationships. *Cf. Miessen*, 2014 WL 702322 at *4 (denying motion to dismiss Canadian parent corporation for lack of standing because complaint alleged that U.S. subsidiary was authorized to enter into purchasing contracts on parent's behalf and could therefore affect parent's legal relationships). Plaintiffs allege nothing more than a parent-subsidiary relationship between Network Cargo International and Network Cargo America. Am. Compl. at ¶¶ 1-2. This allegation, standing alone, is insufficient to establish a principal-agent relationship under Illinois law. *See Gass v. Anna Hosp. Corp.*, 911 N.E.2d 1084, 1090 (Ill. App. Ct. 2009) (holding that parent corporation, by definition, has working control of subsidiary corporation through stock ownership, but stock ownership alone

does not create principal-agent relationship between parent and subsidiary).

Therefore, I grant Pappas's motion to dismiss Network Cargo International's claims for lack of standing. Henceforth, the term "NCS" refers only to Network Cargo America.

III.

Next, Pappas seeks dismissal on jurisdictional grounds. She argues that federal subject matter jurisdiction is lacking because (1) NCS has failed to state a claim under the only federal statute invoked in the amended complaint and (2) there is not complete diversity of citizenship between the parties.

A.

Counts I and II allege that Pappas violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, by downloading and destroying files on NCS's computer system that contained confidential and proprietary information. Pappas contends that NCS has failed to allege (1) conduct involving a statutorily protected computer; (2) damage or loss resulting from her alleged actions; and (3) a violation of one or more of the CFAA's substantive provisions.

With respect to Pappas's first argument, I find that the amended complaint plainly alleges that her misconduct involved a statutorily protected computer. *See* 18 U.S.C. §§ 1030(e)(1)-(2) (defining the terms "computer" and "protected computer"). After

4

copying hundreds of files from NCS's computers to four electronic storage devices, Pappas allegedly engaged in "an act of mass deletion" where "some of the Confidential Information residing on the Electronic Storage Devices was deleted *from NCS's computers* in a manner consistent with user-operated deletion." Am. Compl. at ¶ 77 (emphasis added). Pappas misreads the amended complaint when she argues that NCS alleges nothing more than the deletion of file copies stored on a statutorily unprotected thumb drive. Moreover, Pappas has not demonstrated that the declaration of NCS's forensic analyst "incontrovertibly contradicts" Paragraph 77 of the amended complaint such that the former should control. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). The forensic analyst's declaration is silent or ambiguous about whether Pappas deleted files from NCS's computers.[1] Accepting the allegations in Paragraph 77 of the amended complaint as true for present purposes, NCS has adequately alleged that Pappas engaged in misconduct involving a statutorily protected computer.

Pappas's next challenge to the CFAA claims is that NCS has failed to allege "damage" or "loss" as those terms are defined by statute. *See* 18 U.S.C. §§ 1030(e)(8), (11). The CFAA's private right of action is limited to persons "who suffer[] damage or

---

[1] *See* Am. Compl., Ex. F at ¶ 29 ("The forensic analysis also shows that the rapid accessing and transferring was followed by an act of mass deletion: some of the Files residing on the Electronic Data Storage Devices were deleted in a manner consistent with a user-operated deletion.").

5

loss by reason of a violation of this section[.]" *Id.* at § 1030(g). NCS does not oppose Pappas's contention that "§§ 1030(a)(5)(b) and 1030(a)(5)(C) encompass [her] alleged conduct, such that a showing of both damage and loss should be required." Dkt. No. 44 ("Def.'s Mot. to Dismiss") at 10 n.3.[2] I take no position on whether plaintiffs must plead damage and loss in every case under the CFAA regardless of the statutory violations alleged. *See Int'l Brotherhood of Electrical Workers, Local 134 v. Cunningham*, No. 12 C 7487, 2013 WL 1828932, at *4 n.2 (N.D. Ill. Apr. 29, 2013) (identifying split authority on this question among district courts in this circuit).

The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "The plain language of the statutory definition refers to situations in which data is lost or impaired because it was erased or because (for example) a defendant smashed a hard drive with a hammer." *Motorola, Inc. v. Lemko Corp.*, 609 F.Supp.2d 760, 769 (N.D. Ill. 2009). Paragraphs 77 and 78 of the amended complaint allege that Pappas deleted confidential information from NCS's computer system. In other

---

[2] The substantive offense set forth in Section 1030(a)(5)(C) expressly requires proof of damage and loss: "Whoever intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage *and* loss, shall be punished as provided in subsection (c) of this section." 18 U.S.C. § 1030(a)(5)(C) (emphasis added).

words, Pappas allegedly "impair[ed]...the integrity or availability of data...or information" on her former employer's computers. 18 U.S.C. § 1030(e)(8). This is not a case where a former employee merely copied or downloaded files from her former employer's computer system without diminishing the "completeness or usability of its computerized data." *Cassetica Software, Inc. v. Computer Sciences Corp.*, No. 09 C 0003, 2009 WL 1703015, at *3 (N.D. Ill. June 18, 2009). Thus, I have little trouble concluding that NCS has adequately alleged that Pappas caused "damage" to a statutorily protected computer system.

The analysis of whether NCS has alleged a cognizable "loss" under the CFAA is even more straightforward. The statute defines a "loss" as:

> [A]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11). NSC allegedly undertook a forensic investigation of four computers assigned to Pappas and various electronic data storage devices in part for the statutorily-covered purposes of responding to a possible offense and conducting a damage assessment (i.e., determining whether the integrity or availability of its computerized data had been

impaired). Am. Compl. at ¶¶ 62-65. The cost of this investigation is therefore a cognizable "loss" under the CFAA.

Pappas's final challenge to the CFAA claims is that NCS has failed to identify which substantive provisions of the statute she allegedly violated. *See* 18 U.S.C. §§ 1030(a) (listing substantive offenses). This argument is half-hearted given Pappas's acknowledgement, quoted above, that at least two statutory provisions encompass her alleged conduct. *See* Def. Mot. to Dismiss at 10 n.3 (citing 18 U.S.C. §§ 1030(a)(5)(B) and (C)). Moreover, Pappas's demand for specific statutory citations runs counter to the well-established rule that "a complaint need not plead legal theories, which can be learned during discovery." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (collecting cases). Thus, I find that the amended complaint provides Pappas with sufficient notice of the nature of the CFAA claims asserted against her.

B.

With the CFAA claims (Counts I and II) providing a secure basis for federal subject matter jurisdiction, Pappas's argument that there is not complete diversity of citizenship between the parties is moot in the sense that it will not result in dismissal on jurisdictional grounds. Therefore, I need not decide whether a corporation's principal place of business for purposes of invoking diversity jurisdiction--i.e., its "nerve center," *Hertz*

*Corp. v. Friend*, 559 U.S. 77, 92-93 (2010)--can be located in a state where the corporation is not licensed to do business. I note, however, that at least one appellate court has rejected the argument that Pappas advances on this point. *See Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 880 (5th Cir. 2004) ("[W]e hold today that a corporation's failure to comply with the state law requirements for conducting business in that particular state will not preclude a finding that the corporation has its principal place of business in that state for purposes of diversity jurisdiction; such failure is but one of many factors for that calculus.").

IV.

Pappas's remaining arguments challenge the legal sufficiency of NCS's state law claims (Counts III-XI).

A.

Pappas attacks the breach of contract claim (Count III) on the ground that her employment agreement does not treat her current job as directly competing employment. The non-compete provision in Pappas's employment agreement states, in relevant part, that she may not accept employment with a "business which is similar to or directly competitive with Network Cargo Systems U.S.A., Inc. in the business of [acting as a general sales agent] for airlines represented by [NCS]." Am. Compl., Ex. B at § 3.03. Pappas contends that her current employer, Air Cargo Americas,

LLC, ("Air Cargo Americas") is one of NCS's former customers rather than a competitor in the market for selling cargo space on behalf of airlines. This argument ignores NCS's allegations that Pappas and Air Cargo Americas worked together to create a competing GSA business. Air Cargo Americas allegedly instructed Pappas to obtain NCS's customer database so her future employer could begin soliciting clients. *Id.* at ¶ 85. I must accept NCS's allegations as true at the motion to dismiss stage and cannot credit Pappas's competing characterization of Air Cargo America's business activities. Therefore, Pappas's motion to dismiss Count III is denied.

B.

Pappas seeks dismissal of Count IV under the Illinois Trade Secrets Act ("ITSA"), 765 ILCS § 1065/1 *et seq.*, on the ground that it impermissibly points to broad categories of business information rather than specific trade secrets. "Whether a plaintiff adequately alleges the existence of a trade secret is a fact intensive analysis, but courts have found allegations to be adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms." *Covenant Aviation Sec., LLC v. Berry*, No. 13 C 4371, 2014 WL 537446, at *3 (N.D. Ill. Feb. 11, 2014) (Lefkow, J.) (collecting cases); *see also AutoMed Techs., Inc. v. Eller*, 160 F.Supp.2d 915, 921 n.3 (N.D. Ill. 2001) (noting, in the context of denying

motion to dismiss ITSA claim, that "cases rejecting trade secret claims for lack of specificity are predominantly at later stages in the litigation process"). Here, NCS has identified the purported "trade secrets" that Pappas allegedly misappropriated in sufficiency concrete terms. *See* e.g., Am. Compl. at ¶ 73 (alleging, based on forensic analysis, that Pappas copied "revenue reports and analyses, tonnage reports, the Chicago Office's customer database, contracts with customers that identify rates, revenue projections and sales reports and bids"). Although NCS's definition of "confidential information" may prove to be broader than the ITSA's definition of "trade secrets," its present allegations are sufficient to survive Pappas's motion to dismiss.

As a fallback position, Pappas argues that the ITSA claim, if allowed to stand, preempts NCS's other state law claims (Counts III and V-X). "The ITSA by its [own] terms does not affect 'contractual remedies' or 'other civil remedies that are not based upon misappropriation of a trade secret.'" *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, No. 12-cv-1851, 2014 WL 1099039, at *6 (N.D. Ill. Mar. 20, 2014) (quoting 765 ILCS § 1065/8(b)(1)-(2)). Thus, Pappas is forced to concede in her reply brief that the ITSA does not preempt NCS's breach of contract claim (Count III).

Pappas's remaining preemption arguments also fail because Counts V through X do not presuppose the existence of trade secrets. The ITSA's preemption provision "does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal." *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 405 (7th Cir. 2005) (quoting Commissioners' comment to model statute upon which the ITSA is based). Therefore, the test for ITSA preemption is "whether the plaintiff's [state law] claim[s] would lie if the information at issue were non-confidential." *RTC Indus., Inc. v. Haddon*, No. 06 C 5734, 2007 WL 2743583, at *3 (N.D. Ill. Sept. 10, 2007).

Here, NCS's common law claims implicate legal duties that do not depend on whether its business information ultimately meets the ITSA's definition of a "trade secret." *See* Am. Compl. at Counts V and VI (alleging that Pappas breached her fiduciary duty and duty of loyalty to NCS by acquiring antagonistic interests); Count VII (alleging that Pappas converted NCS's property); Count VIII (alleging that Pappas engage in unfair competition); Count IX (alleging that Pappas unjustly enriched herself); and Count X (alleging that Pappas engaged in a civil conspiracy broader than misappropriation of trade secrets). Stated differently, NCS's common law claims would be viable even if its "customer list were a [matter of] public record." *Hecny*, 430 F.3d at 405. "[I]t is

12

unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what [s]he filched is [ultimately deemed] a trade secret." *Id.* at 404. Therefore, Pappas's motion to dismiss Counts V through X on preemption grounds is denied.

C.

Pappas's remaining arguments for dismissal of NCS's common law claims (Counts V to X) can be disposed of in short order.

Counts V and VI allege in identical fashion that Pappas breached her fiduciary duty and duty of loyalty to NCS. NCS does not even attempt to defend these counts as non-duplicative, so Pappas's motion to dismiss Count VI is granted. However, Pappas is incorrect that Count V merely alleges that she acquired an antagonistic interest during her employment at NCS as opposed to engaging in actual competition. *See NW Podiatry Ctr., Ltd. v. Ochwat*, 990 N.E.2d 347, 361 (Ill. App. Ct. 2013) (noting that employees may generally "plan, form, and equip a competing corporation while still working for their employer, but they may not begin competition"). NCS plainly alleges that Pappas started to compete against her soon-to-be former employer before resigning. *See e.g.*, Am. Compl. at ¶ 85 (describing e-mails Pappas exchanged with Air Cargo Americas in June 2013 before her last day of employment at NCS).

Next, Pappas argues that "[c]laims based on unfair competition and breach of fiduciary duty stand or fall with those based on contract." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992). I have already determined that the breach of contract claim (Count III) is legally sufficient, so the breach of fiduciary duty (Counts V-VI) and unfair competition claims (Count VIII) do not necessarily fail.

Pappas's contention that the conversion claim (Count VII) is "wholly conclusory" ignores NCS's allegations that she did not immediately comply with its demand for the return of its property after her employment ended. *See* Am. Compl. at ¶¶ 63-64 and 70-71; *see also id.* at ¶ 90 (alleging upon information and belief that Pappas still possesses some of NCS's confidential information).

Similarly, NCS's allegations of unfair competition in Count VIII are not wholly conclusory. *See e.g.*, Am. Compl. at ¶ 85 (describing Pappas's communications with Air Cargo Americas to copy NCS's customer database before her employment ended).

As to NCS's unjust enrichment claim (Count IX), Pappas is correct that NCS may plead breach of contract and unjust enrichment only as alternative claims. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). She is also correct that NCS's unjust enrichment claim does not purport to be stated

in the alternative and incorporates by reference allegations relating to Pappas's employment agreement. However, I decline to exalt form over substance by requiring NCS to re-plead Count IX to remove any references to Pappas's employment agreement. *See In re Innovatio IP Ventures, LLC Patent Litigation*, 921 F.Supp.2d 903, 924-5 (N.D. Ill. 2013) (construing allegations relating to existence of express contract in quasi-contract claim as mere background). Notably, no district court in the Seventh Circuit has interpreted *Cohen* as requiring such rigid and formalistic pleading of unjust enrichment claims.

Pappas's contention that NCS's civil conspiracy claim (Count X) is legally deficient because it fails to identify an alleged agreement once again ignores detailed allegations that she coordinated with Air Cargo Americas to copy NCS's customer database. *See* Am. Compl. at ¶ 85.

Finally, Count XI purports to be a claim for preliminary injunctive relief. Pappas seeks dismissal of Count XI on the ground that an injunction is a form of relief rather than a freestanding claim. She is correct, but this is "strictly [a] doctrinal matter." *Mobile Mark, Inc. v. Pakosz*, No. 11 C 2983, 2011 WL 3898032, at *7 (N.D. Ill. Sept. 6, 2011). NCS is already seeking preliminary injunctive relief in a separate motion, so Pappas's motion to dismiss Count XI is denied as moot.

IV.

Pappas's motion to dismiss the amended complaint is granted only in part for the reasons stated above.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 25, 2014